IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROLYN ANN STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-823-BH |
| | § | |
| ANDREW M. SAUL, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | Consent[1] |

## MEMORANDUM OPINION AND ORDER

Based on the relevant findings, evidence, and applicable law, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Carolyn Ann Stephens (Plaintiff) seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and XVI of the Social Security Act (Act). (*See* docs. 1, 22.)

**A.    Procedural History**

On September 26, 2017, Plaintiff filed her applications for DIB and SSI, alleging disability beginning on August 24, 2017. (doc. 18-1 at 57, 78.)[2] Her claim was denied initially on January 11, 2018, and upon reconsideration on March 13, 2018. (*Id.* at 78, 81, 104-05.) On

---

[1]By consent of the parties and the order of transfer dated September 16, 2020 (doc. 21), this case has been transferred for the conduct of all further proceedings and the entry of judgment.
[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the

April 9, 2018, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 124-25.) She appeared and testified at a hearing on March 13, 2019. (*Id.* at 37-54.) On June 19, 2019, the ALJ issued a decision finding Plaintiff not disabled and denying her claim for benefits. (*Id.* at 20-27.)

Plaintiff appealed the ALJ's decision to the Appeals Council on July 17, 2019. (*Id.* at 181-82.) The Appeals Council denied her request for review on February 7, 2020, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 6-8.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was born on September 7, 1967, and was 50 years old at the time of the initial hearing. (*See* doc. 18-1 at 47, 185.) She had a high school education and had past relevant work experience as a baker. (*Id*. at 39, 222-23.)

    **2.    Medical Evidence**

On September 26, 2016, Plaintiff presented to Baylor Medical Center at Irving (Baylor Medical) for an MRI of her lumbar spine. (*Id*. at 304-05.) The MRI showed facet hypertrophy at the L1-L2, L2-L3, and L5-S1 joints, facet and ligamentum flavum hypertrophy and a slight disc bulge on the left side at the L3-L4 vertebrae, and severe facet hypertrophy and thickening of the ligamentum flavum at the L4-L5 vertebrae. (*Id*. at 305.)

In June 2017, Plaintiff presented to the Baylor Medical emergency room for chest pain. (*Id*. at 307.) Her cardiovascular rate and rhythm were normal, her respirations were even and

page numbers at the bottom of each filing.

unlabored, she had full range of motion in her back, and no spinal tenderness or costovertebral tenderness was noted. (*Id*. at 319.) Plaintiff was prescribed Robaxin and Zantac, and discharged in good condition (*Id*. at 309.)

On October 6, 2017, Yong T. Pak, M.D., completed a physical assessment and diagnosed Plaintiff with lumbago and lumbar spondylosis. (*Id*. at 340-41.) He found that her symptoms constantly interfered with the attention and concentration necessary to perform simple work-related tasks, and her medication might cause drowsiness, and/or cognitive impairment. (*Id*. at 340.) Dr. Pak found that Plaintiff needed to lie down or recline during an eight-hour workday, could sit for one to two hours in an eight-hour workday, and could stand/walk for one to two hours in an eight-hour workday. (*Id*.) She could never carry more than 20 pounds, only occasionally carry 10 pounds or less, and had no limitations doing repetitive reaching, handling or fingering. (*Id*.) Dr. Pak estimated that Plaintiff would miss three or four days of work per month because of her impairments or treatment. (*Id*. at 341.)

From October 2017 through November 2017, Plaintiff presented to Irving Orthopedics and Sports Medicine (Irving Orthopedics) for bilateral shoulder pain, left leg pain, back pain, and hip pain. (*Id*. at 345-84.) Plaintiff reported her pain had improved to a 4 on a scale of 10, and although she was told she could have surgery on her shoulder, she deferred. (*Id*. at 377, 379, 383.) Physical examination revealed normal gait, mild tenderness over the acromioclavicular (AC) joint, guarding, and pain with range of motion in the lumbosacral spine. (*Id*. at 349, 354, 374, 381.) An MRI of her lumbar spine showed normal vertebral alignment, mild to moderate severity multilevel anterior spondylosis in the lower thoracic spine and lumbar spine, and no evidence of fracture or acute osseous abnormality. (*Id*. at 361.) An MRI of her right shoulder

without contrast showed a rotator cuff impingement, lateral arch stenosis, and inferior labral tearing. (*Id*. at 364.) She was assessed with a glenoid lubrum tear, impingement syndrome of her right shoulder, right AC joint arthritis, lumbago, and lumbosacral spondylosis. (*Id*. at 3741, 381.) Plaintiff was advised to continue physical therapy for six weeks "for progression of mobility and strength training." (*See id*. at 356, 359, 381, 383.)

On November 30, 2017, Plaintiff presented to the emergency room at Baylor Medical for severe lower back pain that radiated down her left leg. (*Id*. at 494-496, 508-18.) She reported that at its worst, her symptoms were only moderate. (*Id*. at 514.) Her pain was aggravated by movement, sitting, and lying down, and was alleviated by standing or lying on her stomach. (*Id*.) Physical exam revealed tenderness in the left lower lumbar, normal range of motion, and negative straight leg raises. (*Id*. at 515.) Plaintiff was assessed with chronic lower back pain, muscle cramps, and muscle spasms. (*Id*. at 516.) She was prescribed Flexeril and discharged with instructions to follow up with her primary care physician. (*See id*.)

On January 10, 2018, Brian Harper, M.D., a state agency medical consultant (SAMC), completed a physical residual functional capacity (RFC) assessment based on the medical evidence of record. (*Id*. at 60-64.) He found that Plaintiff had the physical RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk (with normal breaks) for about six hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; push and pull an unlimited amount of weight, other than shown for lift and carry, including operation of hand and foot controls; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl; with limited reaching overhead on her left side, and no manipulative, visual, communicative, or

environmental limitations. (*Id*. at 61.) He noted that Plaintiff's alleged limitations were partially supported by the medical record. (*Id*.)

In February 2018, Plaintiff presented to Precision Orthopedics for bilateral shoulder pain and neck pain. (*Id*. at 391-94.) She reported numbness and tingling that radiated down her left arm and bilateral shoulder pain. (*Id*. at 391.) Physical exam revealed mild tenderness over the AC joint, 5/5 strength in her right shoulder, and range of motion that was painful in all planes and worse with elevation and abduction. (*Id*. at 393, 409.) An MRI of her cervical spine revealed minimal or mild central stenosis that was most evident at the C5-C6 level, arthropathy of the Luschka joints resulting in foraminal stenosis that was mild and present at C5-C6, and mild left foraminal stenosis at the C4-C5 level. (*Id*. at 396.) Plaintiff was assessed with a glenoid labrum tear, impingement syndrome in her right shoulder, AC joint arthritis, and cervical radiculopathy; she was given an injection with Marcaine and Dexamethasone in her right shoulder. (*Id*. at 393-94, 410.) She was prescribed Prednisone and advised to continue physical therapy. (*Id*. at 410.)

On March 13, 2018, Randal Reid, M.D., a SAMC, also completed a physical RFC assessment based on the medical evidence of record. (*Id*. at 86-90.) He found that Plaintiff had the physical RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk (with normal breaks) for about four hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; push and pull with limitations in her right upper extremities; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl, with limited reaching overhead on her right side; and no manipulative, visual, communicative, or environmental limitations. (*Id*. at 87-88.) He noted that Plaintiff's alleged limitations were partially supported

5

by the evidence of record (*Id*. at 86.)

In June 2018, Plaintiff presented to the emergency room at Baylor Medical for lower back pain and weakness. (*Id*. at 444-80.) She was diagnosed with chronic lower back pain, urinary tract infection, acute kidney injury, and dehydration, and was prescribed Duricef and instructed to follow-up with her primary care physician in two to three days. (*Id*. at 444-46.)

Plaintiff received treatment for lower back pain and leg pain at Precisions Orthopedics from October 2018 through November 2018. (*Id*. at 431-34, 524-27.) She had a sharp pain that radiated down her left leg, but her pain medication improved her symptoms. (*Id*. at 431, 524.) Physical exam revealed no pain on range of motion of her lumbar spine, negative straight leg raises bilaterally, normal gait, and her paraspinal muscle strength and tone were within normal limits. (*Id*. at 433, 526.)

On February 15, 2019, Plaintiff presented to Precision Orthopedics for a prescription refill and lower back pain. (*Id*. at 520-23.) She reported a throbbing pain that radiated down her left leg that was a 10 on a scale of 10, but she was recently treated with "pain medications [that] were effective." (*Id*. at 520.) Her level of function increased with her pain medication, and she could walk and perform daily activities with less discomfort. (*See id*. at 520.) Physical examination revealed no pain on range of motion of her lumbar spine, paraspinal muscle strength and tone within normal limits, negative straight leg raises bilaterally, FABER test and Gaenslen test negative bilaterally, and normal gait. (*Id*. at 522.) She was assessed with lumbar radiculitis and lumbosacral spondylosis, prescribed Norco, and given a refill for Hydrocodone. (*Id*.)

### 3. Hearing

On March 20, 2018, Plaintiff and a vocational expert (VE) testified at a hearing before

the ALJ. (*Id.* at 83-100.) Plaintiff was represented by an attorney. (*Id.* at 85.)

        **a.**     **Plaintiff's Testimony**

Plaintiff testified that she worked at Minyard's for 20 years as a checker and in the deli. (*Id.* at 39.) She most recently worked for Randall's as a baker. (*See id.* at 39.) She had surgery on her left shoulder after a box that fell on her at work caused a tear in her rotator cuff. (*See id.* at 39, 45.)

Because of her back pain, Plaintiff had trouble sitting and standing, could not walk around the block without taking a break for a "couple of minutes," could not bend down to pick something off the ground, had difficulty twisting, and had trouble sleeping. (*Id.* at 43.) She had a radiating pain in her leg when she was sitting or standing, and could not sit for very long before her leg began to hurt. (*Id.* at 44.) She had pain in both shoulders and could lift only five to ten pounds before feeling pain. (*Id.* at 45.) Her doctors recommended that she have surgery on her right shoulder, but she had not had the surgery yet. (*See id.*) She also testified that Hydrocodone provided a little relief in her pain, but it made her sleepy. (*Id.* at 45-46.)

        **b.**     **VE's Testimony**

The VE considered a hypothetical individual that could stand and/or walk for a total of four hours. (*See id.* at 47.) There were very limited jobs that the hypothetical individual could perform, but she could work as cashier II, dictionary of occupational titles (DOT) 211.462-010 (light and SVP-2), with 46,000 jobs nationally and 8,600 jobs in Texas. (*Id.* at 48.) The VE considered a hypothetical individual who could stand/and or walk for a total of four hours, with the additional limitation of reaching overhead no more than a third of the day. (*See id.* at 50.) There would be a 10% job erosion with these limitations, but she could perform work as a picker

and tagger, DOT 652.685-094, with 18,000 jobs nationally and 2,200 jobs in Texas; and toll collector, DOT 211.462-038 (light, SVP-2), with 15,000 jobs nationally and 2,500 jobs in Texas. (*See id*. at 50-51.)

Plaintiff's attorney then asked the VE if those jobs would be affected if the same hypothetical individual needed 10-minute breaks or was off task for 20% of the average workday. (*Id*. at 52.) The VE responded that the individual could not do those jobs or any other job in a competitive labor market. (*Id*.) If a hypothetical individual was to miss three or more day per month, it was very unlikely that she could maintain or retain employment. (*Id*.) Plaintiff's attorney asked the VE if the same hypothetical individual could perform those jobs if she could only sit for two to three hours. (*Id*.) The VE responded that these jobs were not sitting down sedentary jobs and would allow a person to sit or stand. (*See id*. at 53.)

C. **ALJ's Findings**

The ALJ issued his decision denying benefits on June 9, 2019. (*Id*. at 20-27.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since August 24, 2017, the alleged onset date. (*Id.* at 22.) At step two, the ALJ found the following severe impairments: obesity, degenerative disc disease in the lumbar and cervical spines, and degenerative joint disease in the shoulders with remote rotator cuff surgery on the left shoulder. (*Id*.) Despite those impairments, at step three, he found that Plaintiff had no impairments or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (*Id.* at 23.)

Next, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: sit up to six hours

and stand/walk four hours in an eight-hour workday; lift twenty pounds occasionally and ten pounds frequently; and occasionally reach overhead. (*Id*. at 23.) At step four, the ALJ determined that Plaintiff was unable to perform any past work. (*Id*. at 26.) At step five, the ALJ found that although Plaintiff was not capable of performing past relevant work, considering her age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that she could perform. (*Id*.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from August 24, 2017, through the date of the ALJ's decision. (*Id*. at 27.)

## II. ANALYSIS

**A.     Legal Standards**

   *1.     Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).[3]  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.  A

---

[3]The scope of judicial review of a decision under either the supplemental security income program or the social security disability program is the same. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  The relevant law and regulations governing the determination of claims under either program are also identical, so courts may

finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### *2. Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can

---

rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

      be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**     <u>**Treating Source Opinions**</u>

      In her only issue, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence "because the ALJ failed to properly weigh the opinion of treating physician, [Dr. Pak]." (doc. 22 at 5.)

      The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529. Every medical opinion is evaluated regardless of its source, but the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [her] medical sources." *Id*. § 404.1520(a)(3), § 404.1520c(a).[4] A

---

[4]On January 18, 2017, the Administration updated the rules on the evaluation of medical evidence. *See* 82

11

medical opinion is a statement from a medical source about what the claimant can still do despite her impairment(s) and whether she has one or more impairment-related limitations or restrictions in the following abilities:

> (i) [her] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) [her] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) [her] to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) [her] ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. § 404.1513(a)(2)(i)-(iv).

The ALJ will explain in his determination or decision how persuasive he finds "all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id*. § 416.920c(b). Five factors are considered in evaluating the persuasiveness of the medical opinion(s): (1) supportability; (2) consistency; (3) relationship with the claimant[5]; (4) specialization; and (5) other factors which "tend[s] to support or contradict the opinion." *See id*. § 404.1520c(c)(1)–(5). The most important factors to consider when evaluating the

---

Fed. Reg. 5844, 5853 (Jan. 18, 2017). For claims filed on or after March 27, 2017, the rule that treating sources be given controlling weight was eliminated. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)"). Because Plaintiff filed her application after the effective date, the new 2017 regulations apply.

[5] This factor combines consideration of the (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment; (iv) extent of the treatment relationship; and (v) examining relationship.

persuasiveness of medical opinions and prior administrative medical findings are supportability[6] and consistency[7]. *See id*. § 404.1520c(a). The ALJ will "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [his] determination or decision." 20 C.F.R. § 404.1520c(b)(2). He may, but is not required to, explain how he considered the remaining factors. *Id*. at §§ 404.1520c(b)(2), 416.920c(b)(2).

When a medical source provides multiple medical opinions, the ALJ will articulate how he "considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors," but he is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*. at 20 C.F.R. § 416.920c(b)(1). Although the ALJ evaluates the persuasiveness of the opinions and diagnoses of treating physicians when determining disability, the sole responsibility for a disability determination rests with the ALJ. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Here, Plaintiff had normal muscle strength and tone, normal gait, and normal range of motion, and pain medication improved her symptoms and ability to function. (*Id*. 355, 348-349, 374-75, 393, 409, 413-14, 433, 477, 515, 522, 526.) Plaintiff reported that her pain was a 4 on a scale of 10, her symptoms were at worst moderate, her back pain was alleviated by standing, and

---

[6] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)..., the more persuasive the medical opinions...will be." 20 C.F.R. § 404.1520c(c)(1).

[7] "The more consistent a medical opinion(s)...is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)...will be." 20 C.F.R. § 404.1520c(c)(2).

although surgery was recommended for her right shoulder, she deferred. (*Id*. at 377, 379, 383, 514.) An MRI of her lumbar spine showed normal vertebral alignment, mild to moderate severity multilevel anterior spondylosis in the lower thoracic spine and lumbar spine, and no evidence of fracture or acute osseous abnormality. (*Id*. at 361.)

The ALJ discussed the findings in the medical source statement completed by Dr. Pak, the SAMCs' RFC assessments, Plaintiff's own statements, and the other medical evidence of record. (doc. 18-1 at 23-26.) In giving Dr. Pak's opinions in the medical source statement "little weight,"[8] the ALJ determined that the opinion that Plaintiff could not perform even sedentary work was "not supported by the overall objective medical evidence." (*Id*. at 25.) He noted that Plaintiff's February 2018 exams revealed only mild tenderness to palpation of the cervical spine with guarding, mild tenderness over the right shoulder AC joint, and no deficits in the lumbar spine. (*Id*. at 25.) He also noted that Plaintiff reported numbness and tingling that radiated down her left arm, as well as bilateral shoulder pain, decreased range of motion and pain in the vertical region and shoulder, but no deficits were noted in February 2019. (*Id*.)

Although the ALJ did not make a specific finding as to each of the factors in 20 C.F.R. §§ 404.1520c(c)(1)-(5), he specifically stated that he considered the opinion evidence and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 416.1520c and § 416.920c. (*See id*. at 23.) His decision reflects consideration of supportability and consistency, the two most important factors in evaluating the persuasiveness of medical opinions. He noted the inconsistencies between Dr. Pak's opinion and the medical record and specifically

---

[8] The ALJ's uses the term "little weight" instead of "persuasive," but he specifically notes that he considered the medical evidence "in accordance with the requirements" of 20 C.R.F. §§ 404.1520c and 416.920c. (doc. 18-1 at 23.)

14

found that his opinions were "not supported by the overall objective medical evidence." *See Gentry v. Saul*, No. 3:19-CV-778, 2020 WL 5100848, at *8 (M.D. Tenn. Aug. 10, 2020), *report and recommendation adopted sub nom. Gentry v. Soc. Sec. Admin.*, No. 3:19-CV-00778, 2020 WL 5096952 (M.D. Tenn. Aug. 28, 2020) (finding that the ALJ properly evaluated the opinions of the plaintiff's treating physician where he specifically found that physician's opinion was not supported by his treatment records or the objective medical evidence and was inconsistent with the plaintiff's medical records). Because the regulations require only that the ALJ "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [his] determination or decision," he properly evaluated Dr. Pak's physical assessment. 20 C.F.R. § 404.1520c(b)(2).

Moreover, Dr. Pak's medical source statement was only a "brief and conclusory" check-box questionnaire. (*See* doc. 18-1 at 340-41.) The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations. *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). As noted, the medical source statement at issue was a brief and conclusory check-box form that did not include any explanatory notes or supporting tests or examinations. (*See* doc. 18-1 at 340-41.) The ALJ could therefore also discount Dr. Pak's opinions in the medical source statement for lacking "any substantive explanation." *See Foster*, 410 F. App'x at 833 (agreeing with the magistrate judge's conclusion that the ALJ did not err in assigning only little weight to a brief and conclusory questionnaire). To the extent Plaintiff argues that the ALJ erred in failing to properly weigh Dr. Pak's opinion that she was unable to work due to her lumbago and

15

lumbosacral spondylosis, the ALJ properly discussed his reasons for assigning only "little weight" to Dr. Pak's opinions. (*See* doc. 18-1 at 25, 340-41.)

The ALJ's reasons for assigning only "little weight" to Dr. Pak's medical source statement, combined with his review and analysis of the objective record, satisfy his duty under the regulations. He detailed the reasons why he found the overall evidence, including Dr. Pak's physical assessment, the objective medical evidence, and the course of treatment, unsupported and inconsistent with Plaintiff's subjective allegations of disabling limitation. *See Cherrell Carson Footman, v. Andrew M. Saul, Comm'r of Soc. Sec.*, No. 1:19CV1200, 2020 WL 6728937, at *11 (M.D.N.C. Nov. 16, 2020) (finding that the language in the ALJ's discussion makes clear that her "analysis comports with the new regulations, as she properly considered the supportability and consistency of [the nurse practitioner's] opinions, as well as disregarded [her] opinion that [the] [p]laintiff lacked the ability to work as a matter reserved to the Commissioner."). Therefore, the ALJ properly considered Dr. Pak's opinions.

In conclusion, because the ALJ properly considered Dr. Pak's opinions and his RFC determination was based on the medical evidence in the record, his RFC determination is supported by substantial evidence. *See Swingle v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-365-ORL-MCR, 2020 WL 6708023, at *5 (M.D. Fla. Nov. 16, 2020) (finding that the ALJ properly addressed the supportability and consistency factors and because his RFC determination was based on medical evidence in record, it was supported by substantial evidence). Remand is therefore not required on this issue.

## IV.   CONCLUSION

The Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, on this **4th** day of December, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE